**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

TANGELA D. MOORE,

                    Plaintiff,

          v.                                                    Civ. Action No. 07-2504 (KSH)

ESSEX COUNTY DIV. OF WELFARE, et al.,

          Defendants.                                           **OPINION**

**Katharine S. Hayden, U.S.D.J.**

          This matter was opened to the court upon separate motions for summary judgment by
defendant Essex County Division of Welfare ("ECDW") (D.E. 34) and defendant
Communication Workers of America, Local 1081 ("CWA") (D.E. 35).  Although months have
passed since these motions were filed, plaintiff Tangela Moore, proceeding *pro se*, has not
submitted opposition papers to either of them, even after twice receiving a 20-day enlargement
of time for filing (D.E. 41).

**I.       APPLICABLE STANDARDS**

          Summary judgment is appropriate if, construing "all of the facts and inferences in the
light most favorable to the nonmoving party," *United States v. Carrigan*, 31 F.3d 130, 133 (3d
Cir. 1994), "the pleadings, the discovery and the disclosure materials on file, and any affidavits
show that there is no genuine issue as to any material fact and that the movant is entitled to
judgment as a matter of law."  Fed. R. Civ. P. 56(c).  "An issue is genuine only if there is a
sufficient evidentiary basis on which a reasonable jury could find for the non-moving party, and
a factual dispute is material only if it might affect the outcome of the suit under governing law."
*Kaucher v. County of Bucks*, 455 F.3d 418, 423 (3d Cir. 2006) (citing *Anderson v. Liberty Lobby,
Inc.,* 477 U.S. 242, 248 (1986)).  Of course, the district court may not resolve factual disputes or

1

make credibility determinations at the summary judgment stage.  *Big Apple BMW, Inc. v. BMW of N. Am., Inc.*, 974 F.2d 1358, 1363 (3d Cir. 1992).

Here, Moore has not responded to either of defendants' summary judgment motions and has submitted no evidence or statement of facts.  Local Civil Rule 56.1 requires that "[o]n motions for summary judgment, ***each*** side shall furnish a statement which sets forth material facts as to which there exists or does not exist a genuine issue."  L. Civ. R. 56.1 (emphasis added).  In *Anchorage Assoc. v. Virgin Islands Bd. of Tax Review*, the Third Circuit pointed out the importance of this rule of procedure:

> The rule means that the opposing party, by failing to file a written objection and memorandum as required by the rule, waives the right to controvert the facts asserted by the moving party in the motion for summary judgment and the supporting material accompanying it.

922 F.2d 168, 175 (3d Cir. 1990) (quoting *Jaroma v. Massey*, 873 F.2d 17, 21 (1st Cir. 1989)).  Notwithstanding, where, as here, a party does fail to oppose a motion for summary judgment, summary judgment may only be entered "if appropriate."  *Id.*; *see* Fed R. Civ. P. 56(e) ("If the adverse party does not respond, summary judgment, if appropriate, shall be entered against the adverse party.").  Accordingly, the Court reviews the merits of defendants' submissions.

## II.   FACTS

Moore's one-page complaint asserts as her "cause of action" that "I was unjustly removed from my position based on my race."  (D.E. 1.)  "I demand immediate reinstatement to my position, the removal of the responsible parties, payment of all unpaid bills, and back pay." (*Id.*)  In answers to interrogatories, Moore set forth the factual basis for her allegations as follows:

> The factual basis for the complaint is that Essex County Division of Welfare made it clearly impossible for me to do my job as a Family Service Worker in an effective manner.  I was striped [sic] of the right to schedule/reschedule my own

2

client appointments.  All of my client slips were routed to me by management.  I was to brief my supervisor after seeing each client with how my interview was conducted before I could see the next client. My schedule was changed from 7:30 to 8:30.  I was given a larger share of the work for the vacant districts.  All of these things were done collectively by Norah English, Corinne Massa, Linda Bass, Elaine Kolstein, Christine Hayes-Julien, and Paula Crowley all from Division Management and with full knowledge of David Weiner[,] Local President. There were several things said by each party on several different occasions and I am unable to recall everything.

(D.E. 34-3, p.30.)

In their motions, the defendants assert facts disputing Moore's allegations.  On March 24, 2009, Magistrate Judge Shwartz granted Moore an extension to oppose on or before April 13, 2009.  (D.E. 37.)  When Moore failed to file papers, the Court granted a further extension to May 20, 2009.  Given her failure to oppose to date, the Court deems that Moore has admitted the relevant facts as set forth by defendants.

### A.  Facts Admitted as to ECDW's 56.1 Statement and Record Support

Defendant ECDW sets forth its statement of uncontroverted material facts:

On March 21, 2006, this employee [Tangela Moore] was issued a Preliminary Notice of Disciplinary Action.  Said Preliminary Notice of Disciplinary Action charged complainant with incompetency, inefficiency and failure to perform duties, conduct unbecoming a public employee and neglect of duty.  This employee, a Family Service Worker, employed by the Division of Welfare, Department of Citizen Services, continuously exhibited unprofessional, belligerent and disrespectful behavior toward supervisors, co-workers and clients.  Moreover, there were numerous client complaints alleging unprofessional behavior.  This employee also harassed and provoked her co-workers which created tension and hostility in her unit and a hazardous workplace condition.  This employee had chronically outstanding paperwork and errors in her work.  Several complaints were filed by Plaintiff's co-workers regarding her unprofessional demeanor and failure to complete work. Accordingly, the County of Essex determined that this employee's actions arose to the level of failure to perform duties, conduct unbecoming a public employee, and neglect of duty.  Furthermore, it was determined that the employee's suspension and ultimate removal from employment was necessary to maintain the efficient operation of the Essex County Department of Citizen Services.  Thereafter, a departmental disciplinary hearing was scheduled for April 10, 2006.  Said hearing was subsequently adjourned for the parties to enter into settlement discussions.  On June 15, 2006, in lieu of proceeding with the disciplinary hearing, Ms. Moore

> submitted a letter of resignation to the County of Essex effective March 17, 2006. Thereafter, on September 5, 2006, Ms. Moore filed a Charge of Discrimination with the Equal Employment Relations Commission.   Said Charge of Discrimination was subsequently dismissed by the EEOC and the within litigation followed.

(Def. ECDW Statement of Uncontroverted Material Facts (citations omitted).)   The record supports ECDW's account.  On Moore's performance appraisal covering the period from July 1, 2005 to December 31, 2005, supervisor Paula Crowley stated that Moore "has had numerous complaints from clients regarding her unprofessional demeanor and has had boisterous exchanges with me and other staff.  Ms. Moore has delayed processing/completing cases despite directives from me, Ms. Massa and the 9th floor."  (Essex Cty.'s Exh. B to Mot. Summ. J.)  In that performance review, Moore was rated as not meeting standards in "quality of work," "attitude toward work," "personal relations," and "professional interest."  (*Id.*)

In a February 23, 2006 memorandum entitled "Insubordination – T. Moore, Worker DC – 12," supervisor Corinne Massa wrote:

> A conference was held on 2/22/06 at 2:30 P.M., regarding Ms. T. Moore's insubordination to her immediate supervisor Ms. Elaine Kolstein.  (Present: T. Moore, E. Kolstein, C. Massa, B. Russo).
>
> Ms. Kolstein's complaint is that when she approaches Ms. Moore regarding a question or a directive, Ms. Moore interprets it as a confrontation and feels personally insulted and claims that the agency in general is undermining her ability by monitoring her slips and supervisor having to reschedule her missed redetermination appointments.  Ms. Moore feels harassed and criticized when given directives and when Ms. Kolstein asks her for an explanation.
>
> Ms. Moore's responses to her supervisor are argumentative, therefore, Ms. Moore retaliates by completely ignoring her supervisor to the point whereby she turns and walks away or refuses to respond in a professional manner.
>
> She was instructed by me that when she feels combative she should take a brief (5 min.) "time out," to avoid any further arguments with her supervisor and disruption to her fellow employees.

4

(Essex Cty.'s Exh. B to Mot. Summ. J.)   As part of its submissions, Essex County included a

handwritten complaint letter from a welfare client, a portion of which stated:

> I am deply [sic] hert [sic] of the abuse I have endured at the hands of my case
> worker Mrs. Angela Moore at the Newark public welfare office. I have never
> gave [sic] this woman any reson [sic] at all to treat me in such a way . . . I
> recognize this type of abuse because I am a domestic violence victim many time
> [sic].  Mrs. Moore has been ignoring me[;] disrespected my character by litteraly
> [sic] pusshing [sic] me out of the office on more than two occasions she has
> ensulted [sic] me and has hung up the phone on me in the middle of a sentence
> numerous times[.]  I feel like crying[.]  I feel humiliated[.]  I cant [sic] belive [sic]
> a person her position whome [sic] has to deal w/ a lot of people can have very
> poor social skill[s.]

(Essex Cty.'s Exh. B to Mot. Summ. J.)

Furthermore, at her deposition, Moore was unable to cite any facts supporting her

assertion that she was the victim of discrimination by ECDW:

> Q. Under "Cause of Action" you indicate that you were unjustly removed from
> your position based on race.  Is that accurate?
> A. Yes.
> Q. Can you please tell us what documentary or other evidence you have to
> support your claim that you have been removed from your position at the County
> of Essex based on race?
> A. As I stated, I have no supporting documents because I was – being the fact that
> I was so abruptly removed, I had no time to gather my belongings in my
> condition, but up until I guess February there were, you know –
> Q. February of what year?
> A. February of 2006. There were – you know, I was getting my cases passed
> without an issue.  Everything – my – you know, I had no overdues, I was doing
> my job effectively and then all of a sudden everything just did a total 180.  I could
> no longer schedule my own clients, I could no longer reschedule appointments, I
> couldn't see my clients without supervisory input, I had to constantly report back
> after seeing every client.  I was – I had computer issues and I was forced to move
> in order to conduct business which they knew I couldn't do based on the fact of
> my pregnancy being high risk and that I had a lot of back problems at that time.
> So it was made extremely difficult.  There were plenty of clients that I tried to
> interview that asked for supervisory input and when I would go to seek out Ms.
> [K]olstein's supervisory input, she would send me back to the already disgruntled
> client, saying you need to interview them and she would not intervene even
> though she was requested.
> Q. Ms. Moore, all of the issues that you have just gone through –

5

A. Actually, it should have been – I typed this up really fast.  It should have been based on a lot more than just race.

Q. Currently your Complaint reads based on race?

A. Yes.

Q. So that is what we're going to address today.  All of the issues that you just indicated changed for you in the workplace as of February 2006.  Again I'm going to ask you the question, what documentary or other evidence do you have to support those changes occurred as a result of your race?

A. I don't have any.

(Moore 6/12/08 Dep. 62:5-64:5.)

### B.     Facts Admitted as to CWA's 56.1 Statement and Record Support

Defendant CWA sets forth the following facts in its 56.1 statement:

1.      Tangela D. Moore was employed by the defendant, County of Essex, Division of Welfare from on our about July 26, 2004 through March 17, 2006.

2.      While employed with the Division, plaintiff was a member of and represented by defendant, Communications Workers of America, Local 1081, the certified collective negotiations representative for the Division for the employment classification of Investigator, County Welfare Agency . . . .

3.      From July 26, 2004 through in or around September 30, 2004, plaintiff was assigned to the Division's Training Unit as a Family Service Worker.

4.      Plaintiff was then assigned to the Division's Downtown Citizen Services Center, where she worked as a Family Service Worker.

5.      Between June 1, 2005 and June 17, 2005, Plaintiff was on a medical leave of absence.

6.      At all relevant times, the CWA provided representation to the plaintiff.

7.      Plaintiff was involved in numerous disciplinary and work related grievances while employed by the Division.

8.      CWA provided plaintiff with appropriate representation for all of the employment related incidents and grievances.

9.      The first grievance, a Step I contract grievance, was field by CWA with the Division on behalf of plaintiff on April 8, 2005.

10.     The April 8, 2005 grievance involved work schedule and disciplinary matters between plaintiff, her supervisor, Paula Crowley, the Division Assistant Chief Investigator, Frances Thoroughgood, and a welfare client's complaint that plaintiff was uncooperative.

11.     The April 2005 Step I Grievance claimed that the Division improperly treated plaintiff when she was misdirected by someone other than her immediate supervisor in front of a client, and that her supervisor's demand that she address the client's need at that time interfered with her contractual lunch break.

12.     Due to plaintiff's failure to comply with customer service requirements, the April 2005 grievance was denied on or about April 28, 2005.

6

13.     In response to the denial of the Step 1 grievance, on May 2, 2005, CWA filed, on behalf of plaintiff, a Step II contractual grievance.

14.     The Step II grievance filed on plaintiff's behalf of CWA was denied on May 11, 2005, on the grounds that plaintiff failed to follow the proper protocol for processing welfare applications and to manage her workload.

15.     In response to that denial, a Step III contractual grievance was filed on our about May 16, 2005 by the CWA on behalf of plaintiff.

16.     The Step III grievance was denied on May 31, 2005.

17.     On or about April 20, 2005, Division representative met with plaintiff, who was accompanied by a CWA representative, regarding numerous additional matters involving plaintiff and her clients, such as incomplete paperwork and child support errors.

18.     During the same time period, several Division employees filed written complaints regarding plaintiff's interactions with them and with welfare clients.

19.     Due to complaints from supervisors and co-workers, on or about July 8, 2005, the Division notified plaintiff of a July 14, 2005 disciplinary counseling session. A CWA representative was present with plaintiff at this meeting.

20.     Following the counseling session, plaintiff was advised by the Division, by and through her then supervisor, Paula Crowley, that she must prioritize and improve her work and professional demeanor, especially with regard to client complaint calls.  Plaintiff was also reprimanded for her unprofessional behavior.

21.     An oral reprimand was issued against plaintiff on July 27, 2005.

22.     A CWA representative was present during the reprimand proceedings, as with all other grievance proceedings and plaintiff acknowledges that the CWA afforded her representation.

23.     Following the counseling session and reprimand, the CWA filed a Step I contractual grievance on or about August 2, 2005 challenging the reprimand as well as plaintiff's performance evaluation.

24.     The grievance was denied by the Division on or about August 5, 2005 on the grounds that Ms. Moore "fail[ed] to heed the warnings she was given" and prior disciplinary proceedings warranted the discipline and reprimand.

25.     The Division also concluded that plaintiff failed to "meet standards in the areas of 'attitude toward work' and 'personal relations'".  CWA's grievance in relation to these actions was denied.

26.     In response to that denial, on or about August 23, 2005, the CWA, on behalf of plaintiff, filed a Step II contractual grievance relating to the July 14th counseling sessions and oral reprimand of July 24, 2005.

27.     That grievance was likewise denied by the Division.

28.     Between August 2005 and the start of 2006, additional complaints were filed by welfare clients and co-workers regarding plaintiff's unprofessional demeanor and failure to complete her work.

29.     These complaints wee the subject of various disciplinary citations (e.g. oral reprimand), at which plaintiff was provided CWA representation.

30.     On or about January 31, 2006, plaintiff was issued a five (5) day suspension for insubordination and incompetence due to ongoing complaints from clients, supervisors, and co-workers of insubordination, incompetency,

inefficiency, neglect of duty, failure to perform duties and conduct unbecoming an employee.

31.    On March 21, 2006, the Division issued a Preliminary Notice of Disciplinary Action which charged plaintiff with incompetency, inefficiency, failure to perform her duties, conduct unbecoming an employee, and neglect of duty.

32.    As a result of the March 2006 disciplinary action, a departmental hearing was scheduled for April 10, 2006.

33.    In lieu of proceeding with the hearing, the parties entered into settlement negotiations.

34.    A Stipulation of Settlement was negotiated with the Division, on behalf of plaintiff and with her involvement, by the CWA.

35.    Plaintiff chose not to sign the Stipulation.

36.    On or about June 15, 2006, plaintiff submitted a letter of resignation to the Division, effective March 17, 2006.

37.    Prior to plaintiff's resignation, CWA advised plaintiff of her options, including her right to proceed to a hearing, her right to execute the Stipulation of Settlement and her right to resign.

38.    During the various settlement discussions, plaintiff was represented at all times by a CWA representative.

39.    Thereafter, the CWA, on behalf of plaintiff, attempted, although unsuccessfully, to secure overtime compensation for plaintiff.  That request was denied by the employer on or about August 24, 2006.

40.    On or about August 30, 2006, plaintiff, on her own behalf, filed a complaint with the New Jersey Division of Civil Rights alleging that she was improperly suspended due to her race and sex in violation of Title VII.

41.    On February 23, 2007, the U.S. Equal Employment Opportunity Commission dismissed the civil rights complaint because it was "unable to conclude that the information obtained establishes violations of the statutes."

42.    On or about May 29, 2007, plaintiff filed a complaint against the Division and CWA, on her own behalf in the United States District Court of New Jersey alleging that she was unjustly removed from her position with defendant, Essex County Division of Welfare, on the basis of her race.

43.    CWA acted in good faith, properly and in a timely manner on behalf of plaintiff at all times while she was employed by the Division.

44.    Plaintiff was provided CWA representation in connection with all of the various work related issues she was involved with while employed by the Division.

45.    CWA's ongoing representation of plaintiff was reasonable and appropriate.

46.    CWA neither refused to assist nor denied representation to plaintiff in connection with any employment related grievances, employment issues and/or disciplinary charges.

47.    Following her voluntary resignation, CWA attempted to collect overtime payments on plaintiff's behalf from the Division and provided her with a letter of recommendation.

48.     Plaintiff concedes that the CWA represented her fairly and fully throughout her employment with the Division.

49.     Plaintiff has acknowledged that she has no race claim against the CWA.

50.     CWA did not breach its duty of fair representation to plaintiff.

(CWA's 56.1 Statement ¶¶ 1-50 (citations omitted).)  Thus, CWA's 56.1 statement recounts that it provided assistance to Moore by filing grievances, representing her in disciplinary proceedings, and by attempting to recover back pay after her resignation.  In addition, the sources of record evidence supporting CWA's 56.1 statement demonstrate that CWA submitted several letters to ECDW management advocating on Moore's behalf.

## III.   DISCUSSION

Initially, it is evident from the docket that Moore has kept her contact information current, having updated her phone number and street and email addresses in March 2008 (D.E. 20), and there is no reason to believe she has not electronically received defendants' motions at the email address she provided.  Further, Moore's letter of April 13, 2009 demonstrates her ability to communicate with the Court.

### A.     *ECDW's Motion*

ECDW moves for summary judgment on Moore's discrimination claims on the grounds that plaintiff has failed to present any evidence of discrimination.  As discussed *supra*, the undisputed facts presented on this motion demonstrate that there is *no* competent evidence of discrimination against Moore and *ample* evidence adduced of poor work performance and misconduct by Moore, including abusively treating welfare clients, disrespecting superiors, and failing to fulfill her job duties.

To establish a *prima facie* case of discriminatory treatment based on race, Moore must establish:  (1) is a member of a protected class; (2) was qualified for the position he held; (3) was fired from that position; and (4) suffered adverse action under circumstances that give rise to an

9

inference of discrimination.  *Johnson v. St. Luke's Hosp.*, 307 Fed. App'x 670, 671-72 (3d Cir. 2009) (citing *Jones v. Sch. Dist. of Phila.*, 198 F.3d 403, 410-11 (3d Cir. 1999)).  Having provided the Court with no factual basis for finding discrimination, Moore cannot satisfy prong two in that the record—and facts to which she admits shows she was not performing her job on par with her employer's expectations.  Thus, there is no genuine issue of material fact as to Moore's unsatisfactory performance.  *Krouse v. Am. Sterilizer Co.*, 126 F.3d 494, 501 (3d Cir. 1997).

Even the response to interrogatory drafted by Moore setting forth the basis for the suit reveals that Moore offers no competent evidence of—or even factual basis for finding— discriminatory conduct.  Accordingly, pursuant to Rule 56(e), the Court finds it appropriate that summary judgment be entered against Moore with regard to her discrimination claims against ECDW.

### B.    CWA's Motion

CWA moves for summary judgment as to Moore's claims.  The Court having decided that Moore offered no competent proof of discrimination in this case, the only possible claim the Court can construe as lying against the CWA is one for breach of duty of fair representation.  To prove breach of duty of fair representation, Moore must show "arbitrary or bad-faith conduct on the part of the Union" and offer "substantial evidence of fraud, deceitful action or dishonest conduct."  *Amalgamated Ass'n of St., Elec. Ry. & Motor Coach Employees v. Lockridge*, 403 U.S. 274, 300 (1971).  Moore makes no such showing, and the record demonstrates that the CWA advocated competently on Moore's behalf, filing several grievances and defending Moore's position.  Accordingly, under the undisputed facts it is appropriate pursuant to Rule 56(e) that summary judgment be granted in favor of the CWA.

**IV.     CONCLUSION**

For the foregoing reasons, defendants' motions for summary judgment are granted (D.E.

34, 35) as there is no genuine dispute as to any material fact and Moore has made no showing

that she suffered discrimination by ECDW or CWA.  An appropriate order will be entered.


/s/Katharine S. Hayden_____
Hon. Katharine S. Hayden
U.S. District Judge